UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SWARTZ, individually and on behalf of all persons similarly situated,

            Plaintiffs,

v.

NEXT NET MEDIA LLC, d/b/a THE HOTH, CLEARVIEW CAPITAL LLC,

            Defendants.

Case No. 24-cv-10018

Hon. Brandy R. McMillion
United States District Judge

Mag. Judge David R. Grand

---

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 12)

Plaintiff Jennifer Swartz ("Swartz") filed this class and collective labor action against Defendants Next Net Media LLC and Clearview Capital LLC (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss the Complaint (ECF No. 12). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that Swartz is barred from bringing this suit because of the arbitration agreement she signed when hired. The Court held oral argument on June 20, 2024. For the reasons below, the Court **GRANTS** the motion to dismiss and **COMPELS** arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4.

## I.

Swartz filed suit, individually and on behalf of all persons similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Michigan Improved Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.411 *et seq*. ECF No. 1. The crux of Swartz's complaint is that she was misclassified as an independent contractor when the true nature of her work for Defendants reflected that of an employee. *Id*. at PageID.3-11.

Defendant Next Net Media ("Next Net") is a limited liability company which "owns and operates" multiple "online content creation and marketing brands," including "The Hoth." ECF No. 1, PageID.2-3. Swartz began working for The Hoth as a copywriter and online content creator in or around April 2019. *Id.* at PageID.2. Defendant Clearview Capital ("Clearview") is a limited liability company that purchased a controlling stake in Next Net in or around September 2021. *Id.* at PageID.2, 11. Swartz alleges that she was designated as a 1099 independent contractor, even though "the dividing line which [Next Net] drew between W-2 employee and 1099 independent contractor was . . . not based on the economic realities of the work relationship . . . ." *See id.* at PageID.3. Swartz regularly worked 25-55 hours per week and frequently worked more than 40 hours per week (sometimes for wages below state and/or federal minimum wage and while not receiving overtime pay). *Id.* at PageID.6-7. Defendants exerted a substantial amount

2

of control over Swartz's work, including how she carried out the work and through requiring compliance with Defendants' mandated policies and procedures. *Id.* at PageID.8-10.

In November 2021, Swartz entered into an Independent Contractor Agreement ("ICA"), drafted and promulgated by Clearview, which set forth the terms of her employment, including the basis of her compensation, the term of her employment, and set forth provisions relating to dispute resolution. *See* ECF No. 1-2, PageID.25-29.  Relevant to the Complaint, Paragraph 11(b) of the ICA, states as follows:

> *Governing Law and Venue.*  This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Florida, without effect to its conflict of law provisions.  Each party agrees that any action by either party to enforce the terms of this Agreement shall be subject to mandatory arbitration, as set forth in Exhibit A.  To the extent the mandatory arbitration provisions of Exhibit A do not apply, each party agrees that any action brought by either party to enforce the terms of this Agreement shall be brought exclusively by the other party in an appropriate state or federal court in Florida and waives all objections based upon lack of jurisdiction or improper or inconvenient venue of any such court.

*Id*. at Page ID.28-29.  Exhibit A of that Agreement is an instrument entitled "Mandatory Arbitration and Class Action Waiver Agreement" ("Arbitration Agreement").  *Id.* at PageID.30.  The Arbitration Agreement is incorporated by referenced into the ICA in Section 11:

3

> a. *Entire Agreement*. This Agreement, including the introductory paragraph, recitals, and Exhibit of this Agreement, each of which is incorporated herein and made part of this Agreement by this reference, constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter of this Agreement. This Agreement may be amended or modified only by a written instrument executed by both parties.

*Id*. at PageID.28. As it relates to disputes, the Arbitration Agreement states, in relevant part:

> Except as otherwise stated below, Company and Contractor agree that any dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the validity, enforceability or breach of this Agreement, shall then be resolved by binding arbitration in accordance with the AAA rules then in effect, and not by court or jury trial . . . .

*Id*. at PageID.30. The Arbitration Agreement separately indicates that "[b]oth Company and Contractor agree to bring any dispute in mediation or arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis." *Id*.

In their motion to dismiss, Defendants point to the above provisions as a clear indication that Swartz has agreed to arbitrate her claims and cannot assert her claims in court. ECF No. 12, PageID.86-96. Defendants further argue that Swartz is similarly barred from bringing a class action. *Id.* at PageID.96-98. Defendants also claim that Swartz has pled insufficient facts to demonstrate that Clearview can duly

4

be considered her employer. *Id*. at PageID.98-100. Swartz counters, arguing that the ICA is too ambiguous to reflect a clear intent to arbitrate, and even if it were not, the claims she asserts in the complaint are outside of its scope. ECF No. 15. Defendant replies that even the question of how the ICA must be interpreted is a gateway issue that must be sent to arbitration under the relevant law and under the terms of the agreement itself. ECF No. 16.

## II.

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The Court "must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A]n arbitration agreement presents a reason to dismiss under 12(b)(6) . . . ." *Baker v. Iron Workers Loc. 25 Vacation Pay Fund*,

999 F.3d 394, 400 (6th Cir. 2021) (citing *Teamsters Loc. Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)).

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 1 *et seq*. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable," except for legal or equitable grounds "for the revocation of any contract . . . ." 9 U.S.C. § 2.

Thus, "[t]he FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (internal citations omitted). Because of this "duty to interpret [an arbitration] agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter," *Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 881 (6th Cir. 2021) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301, (2010)), the court must "rigorously enforce agreements to arbitrate," *Nealy*, 852 F. App'x at 881 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr.*, 561 U.S. at 67 (citation and internal quotation marks omitted).

### III.

In support of their motion to dismiss, Defendants argue that the contract between the parties incorporates language that shows a clear intent to arbitrate, and a clear intent to have the arbitrator, not the Court, decide all issues relating to interpreting the ICA and Arbitration Agreement. According to Swartz, however, the terms of the ICA are not so clear. Swartz locates the ambiguity in the fact that the ICA requires only "matters arising out of the contract shall be arbitrated" while the Arbitration Agreement is much broader. Swartz says that the differences between these instruments render the entire contract ambiguous. Swartz also separately argues that her claims under the FLSA are outside the scope of the ICA and thus do not fall under its terms. According to Swartz, relevant law requires there to be a sufficient nexus between the activity complained of in the complaint and the relevant arbitration agreement and here there is none.

A request to arbitrate a particular grievance "should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Bakery, Confectionery, Tobacco Workers & Grain Millers, Int'l Union AFL-CIO v. Kellogg Co.,* 904 F.3d 435, 442-43 (6th Cir. 2018) (quoting *United Parcel,* 748 F.3d at 288) (emphasis added). And any doubts should be resolved in favor of coverage. *United Parcel*, 748 F.3d at 288-89.

Besides the general question of "whether the parties have agreed to arbitrate the substantive dispute," the court also considers the precursor question of whether the parties agreed to arbitrate the question of arbitrability. *See Rent-A-Ctr.,* 561 U.S. at 68–70 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). In determining "arbitrability," "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (citations omitted).

An agreement to delegate these gateway issues is called a "delegation provision." *See Rent-A-Ctr.*, 561 U.S. at 68–70. It is an "additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Thus, this "additional agreement is valid under [the FAA]" unless void under "'law or in equity for the revocation of any contract.'" *Id.* at 70. Once a court determines that a delegation agreement is valid, it can compel arbitration. *Id.*

In other words, a valid delegation provision constitutes "clear and unmistakable" evidence that parties have agreed to arbitrate arbitrability. *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). "The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, *not the court*, must

8

address the challenge." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (emphasis added).

In this case, within the parties' Arbitration Agreement, there is a provision requiring arbitration of any "dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the validity, *enforceability* or breach of this Agreement . . . ." ECF 1-2 Page ID.30 (emphasis added). This is without a doubt a delegation clause, that "clearly and unmistakably show[s] that the parties agreed to arbitrate issues of arbitrability." *Swiger*, 989 F.3d at 506 (analyzing similar language). Additionally, the Arbitration Agreement incorporates the American Arbitration Association's rules as part of its terms.[1] This also clearly and unmistakably confirms that questions of arbitrability must go to the arbitrator. *See Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability.") (citation omitted); *see also Blanton*, 962 F.3d at 846 (collecting cases at the district and circuit level that have held that "incorporation of the AAA Rules . . . provides clear and unmistakable evidence that the parties agreed to arbitrate 'arbitrability.'" (internal quotation marks omitted)).

---

[1] Rule 6(a) of the American Arbitration Association Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration." AAA Emp. Arb. Rules & Mediat. Proced., R.6 (2023).

9

Swartz argues this language, despite its broad scope, is not enough to compel arbitration because the ICA states something different than the Arbitration Agreement, rendering the parties' actual intent unclear. Swartz claims that the ICA "mandates that only contractual claims be resolved through arbitration." *See* ECF No. 15 at PageID.126-127. And therefore, the intent of the parties is at best ambiguous. *Id*. The Court is not persuaded. Not only is the Arbitration Agreement incorporated by referenced into the ICA, but the Arbitration Agreement itself contains a delegation provision. This is not even a situation where the delegation provision is only at issue because of incorporation of the AAA Rules. Here, the Arbitration Agreement has both a specific delegation provision stated in the agreement itself, and it also incorporates the AAA Rules. Consistent with precedent, the Court finds that to be clear and unmistakable evidence that the parties intended to delegate gateway issues of arbitrability to the arbitrator, not the Court. *See Rent-A-Ctr.*, 561 U.S. at 70; *Swiger*, 989 F.3d at 506, *Ciccio*, 2 F.4th at 582; *Blanton*, 962 F.3d at 846.

The Court is mindful that a delegation provision must be valid to be enforced, and that "a specific challenge to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d 501 at 505. However, Swartz's arguments opposing arbitration challenge the validity of the contract as a whole, not the delegation provision specifically. Under the principle of severability, "a party's

10

challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr.*, 561 U.S. at 70–71. Swartz argues: "[d]ue to the differing meanings of the term 'Agreement,' Defendant's contract is, at best for Defendants, ambiguous and self-contradictory." ECF No. 15 PageID.115 (emphasis omitted). She further asserts "each portion of the Contract refers to a contradictory definition of the term 'Agreement': (1) the ICA and (2) the Arbitration Agreement," and that "[d]ue to the differing meanings of the term "Agreement," the ICA "mandates that only contractual claims be resolved through arbitration," while "'Agreement' in Exhibit A means 'any dispute or controversy arising out of or related to the Contractor's engagement with Company . . . .'" *Id.* at PageID.126. She also states that because of the "inconsistent terms and Exhibit A only coming into play regarding contract disputes . . . there is no 'clear and unmistakable' evidence that the parties intended to delegate gateway issues to the arbitrator." *Id.* at PageID.127. The Court disagrees.

Demonstrably, Swartz's arguments challenge the validity of the contract as a whole. She does not challenge the Arbitration Agreement itself, nor does she point out any issue with the specific delegation provision at issue. She does not, for example, argue that the Arbitration Agreement, taken by itself, is ambiguous; she only argues that the ambiguity of that Agreement is created when compared to the

11

other parts of the contract. Therefore, because Swartz has not "challenged the delegation provision specifically," the Court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72.

## IV.

Based on the foregoing, the Court dismisses this proceeding.[2] The Arbitration Agreement reflects a clear and unmistakable agreement to arbitrate that cannot be severed from the rest of the contract for purposes of determining arbitrability. Further, while Swartz posits that the ICA overall may be ambiguous, Swartz makes no challenge to the Arbitration Agreement itself, nor does she make any challenge to the specific delegation provision at issue. Accordingly, the case is dismissed in favor of arbitration. Having dismissed on this ground, the Court does not reach the other arguments put forth by Defendants in their Motion.

---

[2] The Court is mindful of the recent U.S. Supreme Court decision *Smith v. Spizzirri*, 144 S.Ct. 1173 (2024), in which the Court held that a district court must, under § 3 of the FAA, stay proceedings pending arbitration. *Id.* at 1178. This holding, however, is limited to where parties have requested a stay, *see id.*, a situation that is not present here. The Court also notes that its only potential role moving forward would be to enforce the terms of an arbitration award, and therefore, dismissal would be appropriate. *See Brown v. U.S. Xpress, Inc.*, 2024 WL 2700079 (W.D. Mich. May 24, 2024). Additionally, given the forum selection clause, there is a question of whether a change of venue would be appropriate if the Court were not to compel this case to arbitration. *See* ECF No. 1-2 at PageID.28-29.

Accordingly, Defendants' Motion to Dismiss (ECF No. 12) is hereby **GRANTED** and the Court **COMPELS** the parties to arbitration.

**THIS IS A FINAL ORDER THAT CLOSES THIS CASE.**

**IT IS SO ORDERED.**

Dated: June 28, 2024                  <u>s/Brandy R. McMillion</u>
BRANDY R. MCMILLION
United States District Judge